UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES | ) |
| | ) |
| 1) | ) |
| FOR AN ORDER AUTHORIZING THE USE OF | ) |
| UNDERCOVER OPERATIONS IN FURTHERANCE | ) |
| OF A CRIMINAL INVESTIGATION and | ) Case No: 22-mc- |
| | ) |
| 2) | ) |
| FOR AN ORDER OF DISCLOSURE AND | ) **Filed Under Seal** |
| USE OF PATIENT RECORDS | ) |
| | ) |
| IN THE MATTER OF: | ) |
| | ) |
| 1269 Café Ministries | ) |
| | ) |

**UNITED STATES' APPLICATION FOR AN _EX PARTE_ ORDER
AUTHORIZING THE USE OF UNDERCOVER OPERATIONS AND
DISCLOSURE AND USE OF PATIENT SUBSTANCE ABUSE TREATMENT
RECORDS IN A CRIMINAL INVESTIGATION**

The Government, by and through Department of Justice Trial Attorneys, Patrick J.

Queenan and Thomas D. Campbell, respectfully applies for an _ex parte_ order pursuant to 42 U.S.C.

§§ 290dd-2(b)(2)(c) and 42 C.F.R. §§ 2.66 and 2.67, for: (1) an order authorizing the use of

undercover operations in furtherance of a criminal investigation; and (2) an order authorizing

disclosure and use of patient records, to criminally prosecute a program or person holding the

records, namely prescribing practitioners and patient recruiters operating out of the charitable

entity 1269 Café Ministries, located at 456 Union Street, Manchester, New Hampshire, which

includes the following nurse practitioners: (i) Elizabeth Duffy DEA #MD3720845 ("DUFFY");

(ii) Katherine Folkins DEA #FM3979967 ("FOLKINS"); (iii) Kathleen Martin DEA

#MM0996035 ("MARTIN"); (iv) Lisa Martin Burke DEA #MB1590795 ("BURKE"); and (v)

Joanne Pomeranz DEA #MP0736427 ("POMERANZ") (collectively the "PRESCRIBING

PRACTITIONERS"). The PRESCRIBING PRACTITIONERS are each affiliated with Belonging Medical Group, PLLC d/b/a Better Life Partners, LLC ("BETTER LIFE") and each is an addiction-medicine practitioner who is authorized to treat office-based opioid addiction patients under the Drug Addiction Treatment Act of 2000 ("DATA"). Such practices and its patients are exceptionally protected by statutory restrictions relating to the disclosure and use of alcohol and drug abuse patient records. Accordingly, the Orders requested herein are needed to obtain material evidence in a criminal investigation. Such practices and its patients are also exceptionally protected from surveillance and the use of potential undercover operations in furtherance of that investigation, and a court order is required to further the criminal investigation into the PRESCRIBING PRACTITIONERS.

## I. THE STATUTORY SCHEME FOR DISPENSING CONTROLLED SUBSTANCES FOR DETOXIFICATION AND MAINTENANCE TREATMENT

Under the provisions of the Controlled Substance Act ("CSA"), 21 U.S.C. §§ 801-971, the Drug Enforcement Administration ("DEA") registers medical practitioners who dispense narcotic drugs to individuals for "maintenance treatment or detoxification treatment," 21 U.S.C. §823(g). "Maintenance treatment" is defined as the "dispensing, for a period in excess of twenty-one days, of narcotic drugs in the treatment of an individual for dependence upon heroin or other morphine-like drugs." 21 U.S.C. § 802(29). "Detoxification treatment" is defined as the "dispensing, for a period not in excess of one hundred and eighty days, of a narcotic drug in decreasing doses to an individual in order to alleviate adverse physiological or psychological effects incident to the withdrawal from the continuous or sustained use of a narcotic drug and as a method of bringing the individual to a narcotic drug-free state within such period." 21 U.S.C. § 802(30).

The practitioner seeking such a registration must be qualified and abide by DEA statutes

and regulations, as well as the statutes and regulations of the United States Department of Health and Human Services ("HHS"). 21 U.S.C. § 823(g)(1). Furthermore, the applicant must be qualified and willing to "comply with the standards established by the Secretary [of HHS] . . . respecting the quantities of narcotic drugs which may be provided for unsupervised use by individuals in such treatment." 21 U.S.C. § 823(g)(1)(C). In 2000, Congress passed DATA, Pub. L. No. 106-310, 114 Stat. 1222 (codified at 21 U.S.C. §823(g)). Under the DATA, Congress waived the requirements under section 823(g)(1) for practitioners who dispense and administer narcotic drugs in Schedule III, IV and V (but not Schedule II) for maintenance of detoxification treatment, subject to certain conditions. 21 U.S.C. § 823(g)(2)(A). Practitioners who obtain a waiver pursuant to section 823(g)(2) are known as "DATA-waived physicians" or office-based opioid treatment ("OBOT") physicians. Currently, the only controlled substance approved by the Food and Drug Administration ("FDA") for dispensing and administering by OBOT physicians to narcotic addicted patients is buprenorphine, the generic name for Suboxone and Subutex, a Schedule III controlled substance. 42 C.F.R. § 8.12(h)(2)(iii); 21 C.F.R. § 1308.13(e). In addition, the DATA limits the number of narcotic-addicted patients that can be treated at one time by an OBOT physician to 30, 100 or 275 patients. 21 U.S.C. § 823(g)(2)(B)(iii).

In this instance, DUFFY, FOLKINS, MARTIN, and BURKE are each a DATA-waived medical professional who is authorized to treat up to 100 office-based opioid treatment patients pursuant to the requirements of section 823(g)(2), while POMERANZ is a DATA-waived medical professional authorized to treat up to 275 office-based opioid treatment patients.

There are restrictions upon the disclosure and use of alcohol and drug-abuse patient records "which are maintained in connection with the performance of any federally assisted alcohol and drug abuse program," 42 C.F.R. § 2.2, such as the one under which DATA-waived physicians

operate.  *See* 42 U.S.C. § § 290dd-2 and Code of Federal Regulations, Title 42, Ch. I Subch. A, Part 2, "Confidentiality of Alcohol and Drug Abuse Patient Records."  Two of several exceptions to that confidentiality are: (1) the ability of law enforcement to obtain medical documentation relating to patients undergoing office-based opioid addiction treatment, and (2) the ability of law enforcement to seek a court order to place an undercover agent or informant in the practice.  *See* 42 C.F.R. §§ 2.66 and 2.67.  This application is for those orders.  Because the standards for undercover operations and record disclosures are slightly different, they are discussed separately herein and separate orders are sought.

## II.    APPLICATION FOR UNDERCOVER OPERATIONS

Title 42 C.F.R. § 2.67(a) allows law enforcement to seek court authorization to place undercover agents or confidential sources in a drug-treatment program for investigative purposes if they have "reason to believe that employees or agents of the program are engaged in criminal misconduct."  The Court should issue such order upon a showing of good cause. *Id.* at § 2.67(c). In order to find good cause, the Court must find that:

1) There is reason to believe that an employee or agent of the drug treatment program is engaged in criminal activity;

2) Other ways of investigating the criminal activity are not available or would be ineffective; and

3) The public interest and the need to place the undercover/confidential source in the treatment program outweigh the potential injury to the patients in the program, physician-patient relationships and the treatment services.

*Id.*  The contents of such an Order are also prescribed.  It must specifically authorize the placement of "an undercover agent or informant" in the program and limit such placement to twelve months unless a subsequent court order is obtained.  *Id.* at § 2.67(d)(2).  It must also prohibit such agent or informant from disclosing any patient-identifying information except "as necessary to

criminally investigate or prosecute employees or agents of the program." *Id.* The Order should also include "any other measures which are appropriate to limit any potential disruption of the program" or breach of patient confidentiality. *Id.* The example of one such measure is sealing the record of any proceeding for which disclosure of a patient's record has been ordered. *Id.*

The Government is requesting an Order that contains all of the required elements and sealing of the matter. As part of the instant investigation and for the reasons described in the attached Affidavit (**Exhibit A**), it is necessary for law enforcement to send an undercover agent or confidential informant into practicing locations, to determine whether the doctors, the owner of the clinic and/or employees are violating criminal laws in their billing, handling, prescribing and distribution of Suboxone (generic name Buprenorphine/Naloxone), Subutex (generic name Buprenorphine), both of which are Schedule III controlled substances, or any other controlled substances. Other ways to determine the existence of criminal activity would not be as effective as undercover operations. Furthermore, the public interest in determining whether there was illegal prescribing and billing of controlled substances outweighs the potential injury to the patients in the program, physician-patient relationship and the treatment services.

## Notice and Opportunity for Hearing

Generally, the applicant must give notice to the "program director" of this Application and an opportunity to appear and be heard, albeit for the limited purpose of "providing evidence on the statutory and regulatory criteria for the issuance of the court order." 42 C.F.R. § 2.67(b). However, notice and the opportunity to appear and be heard can be waived if "the application asserts a belief that:

(1) The program director is involved in the criminal activities to be investigated by the undercover agent or informant; or

(2) The program director will intentionally or unintentionally disclose the proposed

placement of an undercover agent or informant to the employees or agents who are suspected of criminal activities." *Id.*

The "program director," as defined in 42 C.F.R. § 2.11, is the individual (if the program itself is an individual) or the individual designated as director, managing director or "otherwise vested with authority to act as chief executive of the organization" (if the program is an entity). Given the definitions of "program," also found in section 2.11, it appears that one of the PRESCRIBING PRACTITIONERS, each a DATA-waived physician operating out of 456 Union Street, Manchester, New Hampshire, qualifies as a "program director" for purposes of 42 C.F.R. § 2.11. Since the attached Affidavit (**Exhibit A**) and this Application reveal suspicions that one or more of the PRESCRIBING PRACTITIONERS are involved in the criminal activities that are being investigated, it is likely that they will intentionally subvert the investigation and/or disclose the proposed placement to any other individuals suspected of criminal activities. The Government thus requests that such notice be waived.

III.    **APPLICATION FOR CONFIDENTIAL PATIENT RECORDS**

Under 42 U.S.C. § 290dd-2(a), "records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted,  regulated or directly or indirectly assisted by any department or agency of the United States shall . . . be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section."

Under 42 U.S.C. § 290dd-2(b)(2(C), confidential records as described above in § 290dd-2(a), may not be disclosed to law enforcement personnel unless "authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefore . . . ." That statute continues by explaining, "[i]n assessing good cause the court shall

weigh the public interest and the need for disclosure against injury to the patient, the physician-patient relationship, and to the treatment services."

The United States must obtain an "order authorizing the disclosure or use of patient records to criminally or administratively investigate or prosecute a program or the person holding the records (or employees or agents of that program or person)." 42 C.F.R. § 2.66(a)(1). Such an order "may be applied for by any administrative, regulatory, supervisory, investigative, law enforcement, or prosecutorial agency having jurisdiction over the program's or person's activities." *Id.* In this case, the applicant has jurisdiction to prosecute the criminal violations to be investigated.

Under 42 C.F.R. § 2.66(a)(2), "[t]he application may be filed separately or as a part of a pending civil or criminal action against a program or the person holding the records . . . in which it appears that the patient records are needed to provide material evidence." A disclosure order "may be entered only if the court determines that good cause exists." 42 C.F.R. §§ 2.66(c) and 2.64(d). To make this determination the Court must find that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services. *Id.*

Further, the content of a disclosure must: "(1) Limit disclosure to those parts of the patient's record which are essential to fulfill the objective of the order; (2) Limit disclosure to those persons whose need for information is the basis for the order; and (3) Include such other measures as are necessary to limit disclosure for the protection of the patient, the physician-patient relationship and the treatment services; for example, sealing from public scrutiny the record of any proceeding for which disclosure of a patient's record has been ordered." 42 C.F.R. § 2.64(e). This application

seeks a court order that fulfills all of the mandates of the applicable statutes and regulations as to disclosure of patient records and a sealing of this Application, Affidavit and Court Order.

When conducting substance-abuse investigations, obtaining material evidence from patients that are recovering drug addicts is difficult because, generally, substance-abuse patients do not want to cooperate with law enforcement by consenting to the use and disclosure of their patient records. Furthermore, patients will often notify the specific individuals being investigated of law enforcement's inquiries. Such premature notification can have an adverse effect on the investigation. Thus, other ways of obtaining the information are not available or would not be effective; and, as shown in the attached Affidavit (**Exhibit A**), the public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.

### Notice and Opportunity for Hearing

An application for patient records for a criminal investigation may be granted without notice in the Court's discretion, 42 C.F.R. § 2.66(b). In this case, notice should not be given of the request to seek patient records as such notice is inconsistent during a proposed undercover operation in a criminal investigation. Notice of the application may result in the destruction, removal or tampering with patient records. The United States thus requests that no notice of the application be given.

Although no express notice is required "to the program, to the person holding the records, or to any patient whose records are to be disclosed," each of those must be given the opportunity to seek revocation or amendment of the order. 42 C.F.R. § 2.66(b). That opportunity does not arise, however, until the Order is implemented. *Id.* So, for example, if the United States proceeds with the undercover investigation and gets to the point that it has probable cause to seek a search

warrant[1] for patient records, the Order being requested now would be "implemented" at that time. As with the hearing for the undercover operation, the opportunity afforded is only to "seek revocation or amendment of that order, limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the court order." *Id.*

## IV.    REQUESTED ORDERS

In order to conduct the investigation, the United States is requesting two orders from this Court. One authorizing an undercover investigation as contemplated by 42 C.F.R. § 2.67 and one authorizing the disclosure and use of patient records as contemplated by 42 C.F.R. § 2.66.

### A. Order Authorizing Undercover Investigation

Based on the facts summarized herein and set forth more particularly in the attached Affidavit (**Exhibit A**), there is reason to believe that employees or agents of the program are engaged in criminal misconduct, 42 C.F.R. § 2.67(a) and (c). There is good cause to issue the orders, because other ways of investigating the criminal activity are not available or would be ineffective, and the public interest and the need to place the undercover/confidential source in the treatment program outweigh the potential injury to the patients in the program, physician-patient relationships and the treatment services. *See* 42 C.F.R. § 2.67(c). The proposed Order (**Exhibit B**) incorporates the required contents as set forth in 42 C.F.R. § 2.67(d).

Further, no notice should be given to the "program director" because it is believed that such person or persons are either involved in the criminal activities or will intentionally or unintentionally disclose the proposed undercover investigation to suspects. 42 C.F.R. § 2.67(b)(1) and (2).

---

[1] Even a Grand Jury subpoena would require an order like the one currently being requested.

Accordingly, the United States requests that the proposed Order (**Exhibit B**) be granted and that this Application, its supporting Affidavit and the Court's Order be sealed until further order of this Court.

### B.  Order Authorizing Disclosure and Use of Patient Records

Because the applicant is a law enforcement or prosecutorial agency having jurisdiction of the potential crimes being investigated and because the records are needed to provide material evidence, this Court should issue the proposed Order (**Exhibit C**) for disclosure and use of patient records, 42 C.F.R. § 2.66(a)(1) and (2).  There is good cause to issue the proposed Order (**Exhibit C**) since other ways of investigating the criminal activity are not available or would be ineffective, and the public interest and the need to place the undercover/confidential source in the treatment program outweigh the potential injury to the patients in the program, physician-patient relationships and the treatment services.  *See* 42 C.F.R. §§ 2.66(c) and 2.64(d).  The proposed Order (**Exhibit C**) incorporates the required contents as set forth in 42 C.F.R. §§ 2.66(c) and 2.64(e).

Records may be in the custody of: state or federal agencies or private insurance companies, any one of which may pay for prescriptions or treatment; boards or other administrative agencies with oversight of the Suboxone program or physicians generally; third party billing companies; the PRESCRIBING PRACTITIONERS, and any employees or contractors thereof; or patients themselves.  The records may contain evidence of diversion of buprenorphine, identify victims of the crimes being investigated, and identify witnesses.  The Order will be disclosed to the appropriate party each time it is implemented, so that the appropriate party has an opportunity to seek revocation or amendment as limited by regulation.  42 C.F.R. § 2.66(b).  Other than that

disclosure, the United States is not required to give notice and requests that this Application, its supporting Affidavit, and the Court's Order be sealed until further order of this Court.

Further, disclosure of the records will be limited to employees of the DEA, State of New Hampshire Board of Pharmacy, the State of New Hampshire Medical Board, the New Hampshire Attorney General's Medicaid Fraud Control Unit, the State of New Hampshire Drug Task Force, Federal Bureau of Investigation (FBI), United States Health and Human Service – Office of Inspector General (HHS-OIG), the United States Department of Justice – Criminal Division – Fraud Section, the United States Attorney's Office, and/or any other federal or state law enforcement personnel, and retained experts whose need for this information is the basis of this request, federal Grand Juries, other essential court personnel, in compliance with 42 C.F.R. § 2.64(e)(2), and retained experts. The Government will also maintain control of the medical records as required by all relevant regulations and statutes. No information obtained pursuant to this request will be used to conduct any investigation or prosecution of a patient for seeking treatment for drug addiction, nor will it be used as the basis for an order under 42 C.F.R. § 2.65, in accordance with 42 C.F.R. § 2.66(d)(2).

Any patient identifying information, as defined in 42 C.F.R. § 2.11, will be deleted from any documents made available to the public, in accordance with 42 C.F.R. § 2.66(d) (1), absent further order of this Court or appropriate waivers or consents.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant the attached proposed Orders (**Exhibits B–C**).

Date Submitted:  November 15, 2022

Respectfully submitted,

JANE E. YOUNG
UNITED STATES ATTORNEY

By: */s/ Patrick J. Queenan*
    Patrick J. Queenan (NH Bar #20127)
    Thomas D. Campbell (MA Bar #703271)
    Trial Attorneys
    U.S. Department of Justice
    Criminal Division, Fraud Section
    1400 New York Avenue, NW
    Washington, DC 2005
    Telephone: (202) 875-0326
    Patrick.Queenan@usdoj.gov
    Thomas.Campbell@usdoj.gov

# EXHIBIT A

**AFFIDAVIT IN SUPPORT OF THE UNITED STATES' APPLICATION FOR *EX PARTE* ORDERS AUTHORIZING THE USE OF UNDERCOVER OPERATIONS AND DISCLOSURE AND USE OF PATIENT SUBSTANCE ABUSE TREATMENT RECORDS**

## I.    INTRODUCTION AND AGENT BACKGROUND

1.    I, Tyler Gagne, have been a Special Agent with the Federal Bureau of Investigation ("FBI") since 2018 and am currently assigned to the Boston Field Office.  I was previously assigned to the Philadelphia Field Office.  As part of my duties with the FBI, I investigate health care fraud including violations of Title 18, United States Code, Sections 1349 and 1347, among others, along with the distribution of controlled substances including violations of Title 21, United States Code, Sections 846, 843, and 841(a)(1), among others.

2.    I have investigated and participated in the investigations and prosecutions of doctors, pharmacists, and drug dealers.  I have written, sworn to, and executed numerous search warrant affidavits.  I have directed cooperating witnesses to conduct consensual recordings and assisted other investigators conducting consensual recordings during which prescriptions and prescription drugs have been illegally purchased from doctors, pharmacists, and other unlicensed individuals.  I have testified before the grand jury in cases involving the illegal diversion of prescription drugs.

3.    Investigations for the distribution of controlled substances often focus on licensed doctors, pharmacists or other health care professionals who sell prescriptions for controlled substances to purported "patients," who are actually addicts and/or drug dealers.  My investigations, and those carried out by investigators with whom I have worked, have also involved other federal criminal laws related to money laundering, currency structuring, and tax evasion.

1

4.      Prior to my employment at the FBI I served as a police officer for 11 years: six years with the York (Maine) Police Department where I served as a patrol officer, domestic violence investigator and arson investigator; one and one half years with the State of New Hampshire Division of Liquor Enforcement, where I served as an Investigator, firearms instructor and prosecuted my own criminal cases in District Court; and three and one half years with the City of Manchester (New Hampshire) Police Department, where I served as a patrol officer and Field Training Officer.  I graduated from Saint Anselm College with a Bachelor of Arts degree in Criminal Justice in 2007.  I have attended the State of Maine Criminal Justice Academy, the State of New Hampshire Law Package at the State of New Hampshire Police Academy, and the FBI Academy in Quantico, Virginia.

5.      The FBI, along with the Drug Enforcement Administration ("DEA"), the Department of Health and Human Services Office of Inspector General ("HHS-OIG"), the New Hampshire Department of Justice, Medicaid Fraud Control Unit ("MFCU"), and the Department of Justice, Criminal Division, are investigating certain medical practitioners employed by Belonging Medical Group PLLC (which does business as "Better Life Partners") ("Belonging Medical") as well as patient recruiters for violations of federal law, including violations of 21 U.S.C. § 841(a)(1) (illegal drug distribution), 42 U.S.C. § 1320a-7b (payment and receipt of illegal kickbacks), and 18 U.S.C. § 1347 (health care fraud) related to clinic purportedly operating out of the offices of 1269 Café Ministries in Manchester, New Hampshire, located at 456 Union Street, Manchester, NH 03103 ("1269 Café").

II.      **RELEVANT ENTITIES AND INDIVIDUALS**

6.      **Belonging Medical.**  Better Life Partners, Inc. is a domestic limited liability company registered with the New Hampshire Secretary of State with a principal office located at

2

44 Main Street, Suite 2, Hanover, New Hampshire 03755.  Better Life Partners, Inc. operates under the name of Belonging Medical.   According to public sources of information, Belonging Medical operates a network of Medication Assisted Treatment centers ("MAT") across New Hampshire providing Suboxone (the brand name for buprenorphine and naloxone) to patients seeking addiction therapy, which includes offering such services at a "clinic" located at 456 Union Street, Manchester, New Hampshire 03130.  Belonging Medical is enrolled as a medical provider with both Medicare and Medicaid.

7.    **1269 Café Ministries** ("1269 Café") is a domestic nonprofit corporation registered with the New Hampshire Secretary of State with a principal office address of 456 Union Street, Manchester, New Hampshire 03103.   1269 Café is also registered with the New Hampshire Attorney General's Office, Charitable Trust Unit ("NH CTU") as a charitable entity.  According to annual financial filings obtained from the NH CTU, 1269 Café obtains revenue, almost exclusively, from grants or other charitable donations; it does not report revenue deriving from health care benefit programs.  Indeed, 1269 Café is not enrolled with either Medicare or Medicaid. According to 1269 Café's public Facebook page, 1269 Café is a "Christian outreach ministry to the homeless and people on the edge in the city of Manchester, NH."

8.    Mary Chevalier ("M-CHEVALIER") is a resident of Londonderry, New Hampshire, and the Vice-President of 1269 Café.

9.    Brynn McCurry ("MCCURRY") is a resident of Londonderry, New Hampshire, and purportedly an employee of 1269 Café Ministries.

10.    Tiffany Silva ("SILVA") is a resident of Manchester, New Hampshire.

### III.    FACTUAL BACKGROUND

CS-1 Complaint

11.    On July 22, 2022, the HHS-OIG received a complaint from a confidential source ("CS-1") alleging that a prescriber(s) at a doctor's office operating out of 1269 Café are writing Suboxone prescriptions in exchange for cash payment and paying "drug dealers" in exchange for presenting "state insurance cards for multiple people."

12.    CS-1 manages a rooming house located nearby to 456 Union Street, Manchester, New Hampshire (the location of 1269 Café). On September 9, 2022 and October 14, 2022, agents interview CS-1. CS-1 explained that the 1269 Café moved into 456 Union Street approximately two years ago and operates as a sober home for male tenants, a meal program/soup kitchen, a Suboxone clinic, and a staffing agency. CS-1 explained that, although it is a "sober home," all of the residents are "using" drugs. CS-1 observed people selling drugs outside of 456 Union Street and CS-1 has heard drug dealers yelling out "I got dope," "I got hard," or "I got subs." Based on my training and experience, as well as information relayed to me by the investigative team, I know that "subs" is used to refer to Suboxone when it is sold illegally.

13.    CS-1's initial complaint identified 1269 Café as being operated by "Brynn" and "Mary Chevalier." According to corporate records, M-CHEVALIER is the Vice President of 1269 Café. According to news articles available publicly, MCCURRY is an employee of 1269 Café. CS-1 stated that "they both brag about how much money they make charging welfare insurance for a 'sober house'" and "how much they make having the fake dr office selling prescriptions for cash." CS-1 further alleged that MCCURRY recruits the homeless people and that M-

4

CHEVALIER is the owner of the building, and that they have solicited CS-1 to provide Medicaid insurance cards for tenants from her rooming house.

14.    Additionally, CS-1 explained that, from in or around February 2022 to in or around July 2022, SILVA lived at CS-1's rooming house.  1269 Café paid SILVA "under the table" to do odd jobs at the sober home and also to recruit patients.  SILVA admitted to CS-1, on multiple occasions, that she worked for M-CHEVALIER and MCCURRY and was paid cash to recruit patients.  Specifically, SILVA was paid a "couple hundred dollars" each time she obtained Medicaid beneficiary numbers.  If a client is not already enrolled in Medicaid, SILVA allegedly brought the client to local nonprofits to enroll in Medicaid, Social Security, and other benefit programs.  CS-1 also reported that 1269 Café "keeps a supply of Suboxone on-hand" at 456 Union Street and "they just hand out the Suboxone" without any requirement for counseling.

15.    As explained below, as the prescribing practitioners operating out of 456 Union Street are DATA-waived, the government seeks these *ex parte* orders, in part, to conduct undercover operations at 1269 Café to confirm or dispel the allegations related to illegal prescribing practices, patient recruiting, and health care fraud.

<u>Overdose Deaths at 1269 Café</u>

16.    The investigative team has received summary reports concerning incidents involving the Manchester Police Department at 1269 Café.  Thus far, in 2022, the Manchester Police Department has been dispatched to 1269 Café or the nearby vicinity for suspected overdose deaths in January, February, March, April, May, July, and September 2022.

<u>Medicaid and Medicare Claims Data</u>

17.    According to a review of Medicare and Medicaid claims data from January 2019 through August 2022, there are five medical providers from Belonging Medical that are likely

5

prescribing controlled substances from 1269 Café: Elizabeth Duffy ("DUFFY"), Katherine

Folkins ("FOLKINS"), Kathleen Martin ("MARTIN"), Lisa Martin Burke ("BURKE"), and

Joanne Pomeranz ("POMERANZ").[1]

<u>Elizabeth Duffy</u>

18.    DUFFY is a nurse practitioner, licensed in New Hampshire, NPI # 1962870220,

and registered with Medicare and Medicaid.  DUFFY is registered with the DEA (# MD3720845)

and is DATA-waived to treat up to 100 patients.  According to her DEA registration, she is

registered at 44 S. Main Street, Suite 2, in Hanover, NH 03755, Belonging Medical's principal

place of business.

19.    According to a review of Medicare claims submitted on behalf of DUFFY between

January 1, 2019, and September 6, 2022, over ninety percent of the claims submitted by DUFFY

were for "telehealth."  Over ninety percent of the diagnosis codes submitted to Medicare were for

opioid use.

20.    Eighty-five percent of all prescriptions written by DUFFY and submitted to

Medicare were for opiate partial agonists, such as buprenorphine.  Buprenorphine is a partial

opioid agonist that binds with opioid receptors in the brain, which causes reduced pain and feelings

of wellbeing.  While buprenorphine is not a full opioid, it acts like one, causing moderate receptor

site activity.  When taken as directed, buprenorphine does not create a euphoric state.

21.    Considering only prescriptions for controlled substances, over ninety-nine percent

of prescription written by DUFFY and reimbursed by Medicare were for opiate agonists or opiate

partial agonists.

---

[1] Agents have also observed FOLKINS's and POMERANZ's cars parked at 1269 Café.

22.    According to the Medicare data, DUFFY wrote prescriptions to 105 Medicare beneficiaries with whom she did not have a prior doctor-patient relationship with claims submitted under Medicare Parts B or C.  From my training and experience, this data suggests that DUFFY does not have a prior doctor-patient relationship with these patients, which is an additional red flag indicative of illegal prescribing practices or fraud.

23.    According to a similar review of claims submitted to Medicaid between January 1, 2019, and September 6, 2022, over ninety percent of the diagnosis codes submitted to Medicaid were for opioid use.  Over seventy percent of claims submitted to Medicaid included a modifier that the claim was for a "substance abuse program."

24.    Of the 6,016 claims submitted to Medicaid for prescription drugs written by DUFFY, 5,518 (over ninety percent) were for buprenorphine.

25.    In total, seven of DUFFY's patients died within forty-five days of receiving a prescription from her between April 2020 and March 2022.  Between October 26, 2020, and November 23, 2020 (for a total of twenty-eight days), DUFFY wrote five prescriptions for buprenorphine to Decedent #1.  Decedent #1 died on November 28, 2020, only six days after their most recent prescription from DUFFY.

<u>Katherine Folkins</u>

26.    FOLKINS is a nurse practitioner, licensed in New Hampshire, NPI # 1912182528. She is registered with the DEA (#MF3979967) and is DATA-waived to treat up to 100 patients. According to her DEA registration, she is registered at Belonging Medical's offices in Hanover, New Hampshire.

27.    On January 10, 2017, the New Hampshire Board of Nursing issued an emergency order, suspending FOLKINS nursing license after she was intoxicated while at work.  FOLKINS

subsequently voluntarily surrendered her state nursing license.  Consequently, she was excluded from participation in all federal healthcare programs.  On January 9, 2019, the New Hampshire Board of Nursing issued an order to show cause regarding her state licensure.  FOLKINS's license was subsequently reinstated.  On April 5, 2019, FOKINS was also reinstated in federal healthcare programs.

28.     According to analysis of claims submitted to Medicare between January 1, 2019, and September 6, 2022, FOLKINS wrote prescriptions to ninety-seven Medicare beneficiaries with whom she did not have a prior doctor-patient relationship with claims submitted under Medicare Parts B or C.  From my training and experience, this data suggests that DUFFY does not have a prior doctor-patient relationship with these patients as the Part B or C claims data would reflect additional claims for services if DUFFY had previously treated the patients, which is an additional red flag indicative of illegal prescribing practices and fraud.

<u>Kathleen Martin</u>

29.     MARTIN is a nurse practitioner, registered in New Hampshire, NPI # 1639123763. She is registered with the DEA (#MM0996035) and is DATA-waived to treat up to 100 patients. According to her DEA registration, she is registered at Belonging Medical's offices in Hanover, New Hampshire.

30.     According to a review of claims submitted to Medicare between January 1, 2019, and September 6, 2022, for services rendered by MARTIN, over ninety-eight percent of Medicare claims were associated with a diagnosis of opioid use.  Seventy percent of claims for reimbursement for prescriptions under Medicare Part D were for opiate agonists or opiate partial agonists.

31.     According to that Medicare data, MARTIN wrote prescriptions to eighty-eight Medicare beneficiaries with whom she did not have a prior doctor-patient relationship with claims submitted under Medicare Parts B or C.  From my training and experience, this data suggests that MARTIN does not have a prior doctor-patient relationship with these patients, which is an additional red flag indicative of illegal prescribing practices and fraud.

32.     According to a similar review of Medicaid claims submitted during that same time-period, over ninety-nine percent of Medicaid claims submitted on MARTIN's behalf were associated with a diagnosis of opioid use.

### Lisa Martin Burke

33.     BURKE is a nurse practitioner, registered in New Hampshire, NPI # 1629134648. She is registered with the DEA (#MB1590795) and is DATA-waived to treat up to 100 patients. According to her DEA registration, she is registered at Concord Hospital's Franklin location at 15 Aiken Avenue in Franklin, New Hampshire 03235.  However, according to Medicare enrollment records, effective January 5, 2020, BURKE, as a provider has reassigned her benefits to Belonging Medical.

34.     According to that Medicare data, BURKE wrote prescriptions to thirteen Medicare beneficiaries with whom she did not have a prior doctor-patient relationship with claims submitted under Medicare Parts B or C.  From my training and experience, this data suggests that BURKE does not have a prior doctor-patient relationship with these patients, which is an additional red flag indicative of illegal prescribing practices and fraud.

### Joanne Pomeranz

35.     POMERANZ is a nurse practitioner, registered in New Hampshire, NPI # 1952566507.  She is registered with the DEA (#MP0736427) and is DATA-waived to treat up

to 275 patients.  According to her DEA registration, she is registered at Belonging Medical's offices in Hanover, New Hampshire.

36.    According to a review of Medicare claims submitted on behalf of POMERANZ between January 1, 2019, and September 6, 2022, POMERANZ is a national outlier, among all prescribers in the country, for certain prescriber practices that are indicative of health care fraud and issuing prescriptions for controlled substances that were outside the usual course of professional practice and without a legitimate medical purpose.

37.    Specifically, POMERANZ is in the ninety-ninth percentile among all prescribers in the country for: the total percentage of her patients that are prescribed a controlled substance; the percentage of her prescriptions that are for controlled substances; the average number of physicians from whom POMERANZ's patients have prescriptions (which suggests that the patients are "doctor shopping" for doctors who will write medically unnecessary prescriptions for controlled substances); the number of "pharmacy shopper" patients (meaning that patients are going to multiple pharmacies to fill her prescriptions); and the number of patients who are prescribed morphine-equivalent opiates.

38.    Additionally, POMERANZ is in the ninety-fifth percentile among all prescribers in the country for: the total Medicare payments made for controlled substance prescriptions she wrote; the average controlled substance payment per patient; the percentage of her patients that are prescribed a controlled substance; and the total payment from Medicare for morphine equivalent opiates.

39.    Ninety-seven percent of the Medicare claims submitted for services rendered by POMERANZ were provided to patients with a primary diagnosis of opioid use or dependence.

40.    According to a similar review of Medicaid claims submitted on behalf of POMERANZ during that same time-period, over ninety-nine percent of claims submitted to Medicaid were for patients diagnosed with opioid use of opioid dependence.

41.    POMERANZ's top three prescriptions were for different forms of buprenorphine, for a total of over $250,000 in claims submitted to Medicaid.  For comparison, POMERANZ's fourth-most-prescribed drug was for an anti-nausea drug, for a total of $700 in claims submitted to Medicaid.

42.    According to that Medicare data, POMERANZ wrote prescriptions to 201 Medicare beneficiaries with whom she did not have a prior doctor-patient relationship with claims submitted under Medicare Parts B or C.  From my training and experience, this data suggests that POMERANZ does not have a prior doctor-patient relationship with these patients, which is an additional red flag indicative of illegal prescribing practices and fraud.

## CONCLUSION

43.    Based on these allegations and other information obtained during the course of the investigation, the government (through the DEA, FBI, HHS-OIG, MFCU, and DOJ) has opened an investigation into MCCURRY, M-CHEVALIR, SILVA, and others, including any prescribing practitioners, for possible violations of 21 U.S.C. § 841(a)(1) (illegal drug distribution), 42 U.S.C. § 1320a-7b (payment and receipt of illegal kickbacks), and 18 U.S.C. § 1347 (health care fraud).


_____
Tyler Gagne, Special Agent
Federal Bureau of Investigation



Subscribed and sworn to before me

This _____ day of November, 2022.


_____
HONORABLE ANDREA JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN RE APPLICATION OF THE UNITED STATES | ) | |
| | ) | Case No: 22-mc- |
| FOR AN ORDER AUTHORIZING THE USE OF | ) | |
| UNDERCOVER OPERATIONS IN FURTHERANCE | ) | **Filed Under Seal** |
| OF A CRIMINAL INVESTIGATION and | ) | |
| | ) | |
| IN THE MATTER OF: | ) | |
| | ) | |
| 1269 Café Ministries | ) | |
| | ) | |

[PROPOSED] **ORDER AUTHORIZING UNDERCOVER OPERATIONS**

This matter is before the Court on the Government's application, pursuant to 42 U.S.C. §§ 290dd-2(b)(2)(C) and 42 C.F.R. § 2.67, for an *ex parte* order authorizing undercover operations to criminally investigate or prosecute patient recruiters and prescribing practitioners operating out of a purported clinic located within the offices of 1269 Café Ministries at 456 Union Street, Manchester, New Hampshire and any associated clinics (collectively "1269 Café Ministries"). This includes the following nurse practitioners: (i) Elizabeth Duffy DEA #MD3720845 ("DUFFY"); (ii) Katherine Folkins DEA #FM3979967 ("FOLKINS"); (iii) Kathleen Martin DEA #MM0996035 ("MARTIN"); (iv) Lisa Martin Burke DEA #MB1590795 ("BURKE"); and (v) Joanne Pomeranz DEA #MP0736427 ("POMERANZ") (collectively the "PRESCRIBING PRACTITIONERS"). The PRESCRIBING PRACTITIONERS are each affiliated with Belonging Medical Group, PLLC d/b/a Better Life Partners, LLC ("BETTER LIFE") and each is an

1

addiction-medicine practitioner who is authorized to treat office-based opioid addiction patients under the Drug Addiction Treatment Act of 2000 ("DATA").

The Government has asserted a reason to believe that employees or agents of those programs are engaged in criminal misconduct as required by 42 C.F.R. § 2.67(a).

The Court finds good cause as required in 42 C.F.R. § 2.67(c) for such Order for the following reasons:

1.      There is reason to believe that an employee or agent of the program is engaged in criminal activity;

2.      Other ways of obtaining evidence of this criminal activity are not available or would not be effective; and

3.      The public interest and need for the placement of an undercover agent or informant in the program outweigh the potential injury to patients of the program, physician-patient relationships and the treatment services.

IT IS THEREFORE ORDERED that the Government's Application for an Order authorizing undercover operations at 1269 Café Ministries and any associated clinics be GRANTED for a period of twelve months and prohibits the undercover agent or informant from disclosing any patient identifying information obtained from the placement except as necessary to criminally investigate or prosecute employees or agents of the program;

IT IS FURTHER ORDERED that the Government shall refrain from using any information obtained under this Order to conduct any investigation or prosecution of a patient, or as the basis for an application for an order under 42 C.F.R. § 2.65, in compliance with 42 C.F.R. § 2.67(e).

IT IS FURTHER ORDERED that no notice should be given to the program director concerning the undercover operation because the program director may be involved in the criminal

activities to be investigated or may intentionally or unintentionally disclose the proposed placement of an undercover agent or informant to those being investigated. *See* 42 C.F.R. § 2.67(b)(1) and (2).

IT IS FURTHER ORDERED that the Clerk of the Court seal the Application, Affidavit in Support and this Order until further order of this Court.

Dated this _____ day of November, 2022.

_____

HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

3

EXHIBIT C

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

_____
IN RE APPLICATION OF THE UNITED STATES    )
    )    Case No: 22-mc-
FOR AN ORDER OF DISCLOSURE AND    )
USE OF PATIENT RECORDS    )    **Filed Under Seal**
    )
IN THE MATTER OF:    )
    )
1269 Café Ministries    )
_____   )


[PROPOSED] **ORDER FOR DISCLOSURE AND USE OF PATIENT RECORDS**

This matter is before the Court on the Government's application, pursuant to 42 U.S.C. §§ 290dd-2(b)(2)(C) and 42 C.F.R. § 2.66, for an *ex parte* order authorizing undercover operations to criminally investigate or prosecute patient recruiters and prescribing practitioners operating out of a purported clinic located within the offices of 1269 Café Ministries at 456 Union Street, Manchester, New Hampshire and any associated clinics (collectively "1269 Café Ministries"). This includes the following nurse practitioners: (i) Elizabeth Duffy DEA #MD3720845 ("DUFFY"); (ii) Katherine Folkins DEA #FM3979967 ("FOLKINS"); (iii) Kathleen Martin DEA #MM0996035 ("MARTIN"); (iv) Lisa Martin Burke DEA #MB1590795 ("BURKE"); and (v) Joanne Pomeranz DEA #MP0736427 ("POMERANZ") (collectively the "PRESCRIBING PRACTITIONERS"). The PRESCRIBING PRACTITIONERS are each affiliated with Belonging Medical Group, PLLC d/b/a Better Life Partners, LLC ("BETTER LIFE") and each is an

1

addiction-medicine practitioner who is authorized to treat office-based opioid addiction patients under the Drug Addiction Treatment Act of 2000 ("DATA").

The Government has asserted that the records are needed to criminally or administratively investigate or prosecute a program or the person holding records or agents or employees of a program involved in the treatment of drug addicted patients with Suboxone and/ or Subutex and that it has jurisdiction over the program's or person's activities. In compliance with 42 C.F.R. § 2.66(a)(2), the application refers to any patient using a fictitious name to anonymize the patient and does not contain or otherwise disclose any potential identifying information.

For good cause shown, the Court finds that:

(1) Other ways of obtaining the information are not available or would not be effective; and

(2) The public interest and need for the disclosure outweigh the potential injury to patients of the program, the physician-patient relationship and the treatment services.

IT IS THEREFORE ORDERED THAT the Government's Application for an Order of Disclosure and Use of Patient Records to Investigate or Prosecute a Program or the Person Holding the Records is GRANTED as to the practice at 1269 Café Ministries and any associated clinics.

IT IS FURTHER ORDERED that the Government shall:

(1)    Limit disclosure to those parts of the patients' records which are essential to fulfill the objective of this order;

(2)    Limit disclosure to those persons whose need for the information is the basis for the order, namely, employees of the DEA, State of New Hampshire Board of Pharmacy, the State of New Hampshire Medical Board, the New Hampshire Attorney General's Medicaid Fraud Control Unit, Federal Bureau of Investigation (FBI), United States Health and Human Service – Office of Inspector General

(HHS-OIG), the United States Department of Justice - Criminal Division - Fraud Section,  the United States Attorney's Office, and/or any other federal or state law enforcement personnel, and retained experts whose need for this information is the basis of this request, federal Grand Juries, and other essential court personnel, in compliance with 42 C.F.R. § 2.64(e)(2).

(3)     Delete patient identifying information from any documents made available to the public, in compliance with 42 C.F.R. § 2.66(d)(1).

(5)     Refrain from using any information obtained under this Order to conduct any investigation or prosecution of a patient, or as the basis for an application for an order under 42 C.F.R. § 2.65, in compliance with 42 C.F.R. §§ 2.66(d)(2).

IT IS FURTHER ORDERED that this Order will be disclosed to the appropriate party each time it is implemented so that the appropriate party (the program, the person holding the records or the patient whose records are to be disclosed) has an opportunity to seek revocation or amendment of this Order, limited to the presentation of evidence on the statutory and regulatory criteria for the issuance of the Court Order as required by 42 C.F.R. § 2.66(b).

IT IS FURTHER ORDERED THAT except as set forth above, no notice of this Order need be given.

IT IS FURTHER ORDERED that the Clerk of Court seal the Application, Affidavit in Support and this Order until further order of this Court, except that copies of this Order may be disseminated as set forth in this Order.

Dated this _____ day of November, 2022.


_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

3